McDUFFEE et al. v. HESTONVILLE, M. & F. PASSENGER RY. CO. et al.

(Circuit Court, E. D. Pennsylvania. January 28, 1908.)

No. 45.

1. SPECIFIC PERFORMANCE—UNAUTHORIZED CONTRACT BY TRUSTEE.

Where a patent was assigned to D. in trust, without power to sell or incumber the same, for the benefit of three persons named, and D. became the owner of a one-third interest therein, whereupon he contracted to sell all right, title, and interest in the patent, together with all claims for damages for past infringements—the purchaser having full knowledge of the condition of the title—such purchaser was entitled to enforce specific performance on its agreement to accept whatever title D. was able to convey.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 20–23.]

2. PATENTS—ASSIGNMENTS—EFFECT.

A patentee conveyed it with other interests to S., "his assignees and successors in trust." and directed that S. and his successors should have and hold the patent in trust, without power to sell, incumber, or otherwise dispose of the patents, etc., for the benefit of three persons, S. being one of them. S. thereafter assigned the same interest, so far as he had any right to do so, to D., trustee. Held that, by such transfer, D. acquired title in trust for himself, and for the two other persons, for whose benefit S. had held the title, so that D. was entitled to convey a one-third interest in the patent, of which he was the absolute owner.

3. SPECIFIC PERFORMANCE—PARTIAL FAILURE OF TITLE—ABATEMENT OF PRICE.

D. having agreed to convey the whole title to a patent for $20,000, when he was unable to convey but a one-third interest therein, the purchaser, on electing to take specific performance of such title as D. was enabled to convey, was entitled to an abatement of two-thirds of the price.

On Rehearing.

For former opinion, see 154 Fed. 201.

J. B. McPHERSON, District Judge. The facts in this case may be found in the court's opinion published in 154 Fed. 201. It was there assumed that the General Electric Company would not be content with anything less than the whole title to the patent, and, as McDuffee could not give such a title, the dismissal of the cross-bill asking for specific performance seemed to be inevitable. Before a decree was entered to that effect, however, the pending petition for a rehearing was presented and allowed, in which the General Electric Company declares its willingness to accept whatever title McDuffee is able to convey, and asks that a decree be entered requiring the conveyance of such interest as he may possess, and also making an adequate allowance to the General Electric Company for his breach of the agreement to convey the whole title. The rehearing has now been had, and, in order that a speedy opportunity for prosecuting an appeal may be afforded, I shall not take the time that would be necessary to discuss the numerous questions raised by counsel, but shall only say briefly that in my opinion the petition has put a different face upon the situation. Since the General Electric Company is willing to accept what McDuffee was, and still is, able to give—for his contract with the Allis-Chalmers Company is in no respect an obstacle to the decree now asked for, the latter company having had previous notice of the petitioner's conflicting claims—I think the court is bound to order the conveyance to be made.

As the facts are undisputed a reference to a master would be superfluous. The title which McDuffee is able to convey is derived from the assignment dated March 6, 1895, under which he acquired the undivided one-third equitable interest in the patent, and this interest he should now be obliged to transfer to the General Electric Company. At the time the assignment of March 6th was made Schlesinger was the owner, as trustee, of the whole legal title, and was also the owner, as an individual, of an undivided one-third equitable interest. Being thus interested in two characters, he transferred all his interest, legal and equitable—expressly selling and assigning, "so far as I have any right so to do, unto John I. McDuffee of Philadelphia, Pa., trustee, all my right, title and interest (both personal and as trustee) in and to the following letters patent and applications for letters patent, * * * together with all choses in action thereunder"—and requested the Commissioner of Patents to issue "said applications to John I. McDuffee, trustee, as the assignee of the entire interest therein." It is argued by the counsel for McDuffee and the Allis-Chalmers Company that this instrument had no effect upon Schlesinger's equitable interest. I quote from page 5 of their brief:

"The utmost, then, which was intended to be, or could be, attained by this instrument was to vest in McDuffee, as trustee, the same interest which Schlesinger had held, and without change of the cestuis que trustent. For any implication that Schlesinger intended to convey his beneficial interest to McDuffee as an individual is rebutted conclusively by the fact that the grant was expressly to him as trustee. Trustee for whom? Not for himself, but for

Schlesinger, who remained, as before, a cestui que trust of one-third. The expression 'both personal and as trustee' employed by Schlesinger does not in any way change the character of the assignee, and the word 'personal' is amply explained by the fact that Schlesinger was the applicant in all the applications and appropriately thus made the formal request to the Commissioner of Patents."

I am unable to assent to this argument. If nothing more was accomplished by the assignment of March 6th than is supposed in the foregoing quotation, that instrument was ineffective, so far as Schlesinger's equitable interest was concerned, although he declares in unmistakable language that he intends to convey it, and uses apt words so to do. As I interpret the assignment, it transfers the legal title from Schlesinger, trustee, to McDuffee, trustee, and if this were all, McDuffee would hold in trust for Schlesinger, Mrs. McDuffee, and Williams. But there is something else. Schlesinger also owned an equitable title, and this "personal" interest he also conveyed to McDuffee, trustee, thus making him the owner of the equitable title that had previously been Schlesinger's, and, so far as this equitable title is concerned, constituting him trustee for himself. It would certainly have been an extraordinary transaction if Schlesinger had conveyed his equitable title, and, by the same instrument, had retained it; and surely such a result could only be accomplished by the use of the clearest language. In my judgment, no such language appears here, but the court is asked to reach the result by inference, and by disregarding the declared and unambiguous intention of the assignor to convey all his interest, both legal and equitable. I therefore hold that McDuffee, by force of the conveyance made on March 6th, not only became the trustee holding the entire legal title in Schlesinger's place, but also became the equitable owner of one-third, that being the "personal" interest which Schlesinger was able to transfer, and in my opinion did transfer, by his assignment. Accordingly, McDuffee, owning the whole legal title, and owning also the equitable one-third interest, became trustee for himself so far as the equitable interest in one-third was concerned, and continued to hold this double relation to the patent until the rise of the controversy now before the court. If this is correct, he was then able to convey both the legal and the equitable title to an undivided one-third interest; for, so far as that interest was concerned, the two titles merged, and as the absolute owner he was able to make an effective transfer to any purchaser.

The price agreed upon for the whole title was $20,000, and as the facts in proof do not debar the General Electric Company from claiming compensation in this proceeding, an abatement of two-thirds from that amount should be made, so that one-third only should be paid to McDuffee or paid into court, as may appear to be the proper course when the formal decree comes to be entered.

The order directing a decree to be entered in accordance with the opinion filed June 6, 1907, is therefore modified so as to direct a decree to be entered carrying out the views now expressed, and also dividing the costs equally between McDuffee and the Allis-Chalmers Company.